IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS ROBERT COLLIER,           )
                                  )
               Petitioner,        )        No. C 06-00511 CRB (PR)
                                  )
        vs.                       )        ORDER DENYING PETITION
                                  )        FOR A WRIT OF HABEAS
E. YLST, Warden,                  )        CORPUS
                                  )
               Respondent.        )
_____    )

**INTRODUCTION**

Petitioner Douglas Collier, a state prisoner at San Quentin State Prison ("SQSP"), filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT") decision of May 20, 2005 finding him not suitable for parole.

The court found that the petition, when liberally construed, appeared to state a cognizable due process claim under § 2254 and, on June 2, 2006, ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer to the order to show cause and petitioner subsequently filed a traverse. For the reasons discussed below, the petition is denied.

//

**BACKGROUND**

Petitioner was convicted of second degree murder on December 17, 1981 in the Superior Court of the State of California in and for the County of Santa Clara and was sentenced to an indeterminate prison term of 15 years to life.

Petitioner has been found not suitable for parole each time he has appeared before the BPT.  On May 20, 2005, petitioner appeared with counsel before a BPT panel for a subsequent parole consideration hearing and again was found not suitable for parole.  The panel found that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  The presiding commissioner explained that, in deciding to deny parole, the panel considered petitioner's commitment offense, his prior criminal and social history, his behavior and programming since commitment, and any other information that may have a bearing on parole suitability.  <u>Accord</u> Cal. Code Regs. tit. 15, § 2402(b).

Petitioner challenged the BPT's May 20, 2005 decision in the state superior, appellate and supreme courts.  After the Supreme Court of California denied his final state habeas petition on January 4, 2006, the instant federal petition for a writ of habeas corpus followed.

**DISCUSSION**

A.      <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." <u>White v. Lambert</u>, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state

inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

When the state court decisions do not provide a reasoned opinion, as in this case, the court "must conduct an independent review of the record to determine whether the state court's decision was objectively unreasonable." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).

//

//

//

3

B.      Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's May 20, 2005 decision finding him not suitable for parole, and denying him a subsequent hearing for two years, on the ground that the decision does not comport with due process.  Petitioner claims that the BPT's decision is not supported by some evidence in the record having an indicia of reliability and that it is instead based on the unchanging facts of his offense.

As a preliminary matter, respondent contends that this court lacks jurisdiction to review petitioner's habeas petition because California inmates have no liberty interest in parole protected by federal due process.  Respondent bases this argument on the California Supreme Court decision in In re Dannenberg, which held that "the statutory language [of California's parole scheme under section 3041] belies the notion of a mandatory duty to set a release date for all indeterminate life inmates."  In re Dannenberg, 34 Cal. 4th 1061, 1087 (2005) (emphasis in original).

The Ninth Circuit recently rejected respondent's no-liberty-interest argument as misconstruing the narrow ruling in Dannenberg and confirmed that "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)." Sass, 461 F.3d at 1125.  After Sass, it is well-established that section 3041 "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections.  Id. at 1128; McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  It matters not that, as is the case here, a parole release date has never been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

4

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole.  Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same).  This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." Hill, 472 U.S. at 457.  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability.  Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904.  Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board."  Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995).

The record indicates, and petitioner does not challenge, that the BPT afforded petitioner and his counsel an opportunity to speak at the hearing, gave them time to review petitioner's central file, allowed them to present relevant documents, and provided them with a reasoned decision in denying parole.  Petitioner's claim is that the board's determination of parole unsuitability lacked some evidence necessary to support the decision and to satisfy due process.  This claim is without merit.  A review of the relevant factors relied upon by the BPT, and as they were explained to petitioner, reveals that there was some evidence to support the parole denial.

1      1. <u>Commitment Offense and Pre-Offense Behavior</u>

2          The BPT's decision on May 20, 2005 cited the nature and circumstances

3  of petitioner's crime as evidence for denying parole.   When petitioner escorted

4  Danny Bettencourt to the victim's home to retrieve a mutual friend's belongings

5  on April 6, 1981, he knew "at the very least" there was going to be a fight.  May

6  20, 2005 Hr'g Tr. at 93 (Resp't Ex. C).  When an altercation ensued, petitioner

7  stabbed the victim 28 times: 16 times with a screwdriver, and 12 times with a

8  butcher knife.  The board was particularly concerned that several of the stab

9  wounds were inflicted when the victim was lying semi-conscious on the ground,

10 and also after petitioner and Mr. Bettencourt dragged the victim to the couch, at

11 which point the victim was "completely helpless."  <u>Id.</u> at 94.  The board

12 concluded that petitioner carried out the offense "in a manner that demonstrates

13 an exceptionally callous disregard for human suffering." <u>Id.</u>  <u>Accord</u> Cal. Code

14 Regs. tit. 15, § 2402(c)(1)(D).

15         The  board also considered petitioner's unstable social history prior to

16 incarceration, including "his substance abuse, his high school dropout history,

17 [and] his runaway history," as evidence for denying parole.  Resp't Ex. C at 97.

18 <u>Accord</u> Cal. Code Regs. tit. 15, § 2402(c)(3).  Petitioner admittedly experimented

19 with "marijuana, amphetamines, cocaine, LSD, PCP, and mushrooms" beginning

20 at age 13,  ran away from home when he was fourteen, and dropped out of high

21 school in the eleventh grade.  Resp't Ex. C at 24, 26.  The board was especially

22 concerned with  petitioner's continued abuse of drugs and alcohol in his late

23 teens following a year spent at a rehabilitation facility.

24         Petitioner contends that continued reliance on the immutable

25 circumstances of his murder offense and social history implicates his due process

26 rights.  Petitioner suggests that the BPT's reliance on static factors conflicts with

27

28                                      6

the Ninth Circuit's ruling in <u>Biggs</u>.  In <u>Biggs</u>, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the nature of his offense and his prior conduct "would raise serious questions involving his liberty interest in parole . . . and could result in a due process violation." <u>Biggs</u>, 334 F.3d at 916-17.

The Ninth Circuit recently emphasized the continuing vitality of <u>Biggs</u>, but found that relief for the petitioner was precluded by the <u>Sass</u> decision, which upheld a denial of parole based in reliance on a commitment offense that was less callous and cruel than Irons's.  <u>Irons v. Carey</u>, No. 05-15275, slip op. 8335, 8348-49 (9th Cir. July 13, 2007).[1]  However, the Ninth Circuit made a point of noting that all of the cases in which it had previously held that a denial of parole based solely on the commitment offense comported with due process involved situations where the prisoner had not yet served the minimum number of years required by his sentence.  <u>Id.</u> at 8349.  "All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." <u>Id.</u>

In this case, petitioner was deemed unsuitable for parole well after the expiration of the minimum term of 15 years.  However, this court need not decide whether this is a case where the rationale underlying <u>Biggs</u> justifies relief because petitioner's denial was not based solely on his commitment offense and conduct before incarceration.

//

---

[1]The <u>Sass</u> panel questioned <u>Biggs</u> by noting that "it is not our function to speculate about how future parole hearings could proceed."  <u>Sass</u>, 461 F.3d at 1129.

1        2. <u>Lack of Insight and Insufficient Self-Help</u>

2         Even if the BPT's reliance on the nature of the murder offense and

3 previous criminal record did not satisfy the "some evidence" standard, petitioner

4 is not entitled to relief. The board's decision was not based solely on petitioner's

5 murder offense and prior conduct. The board discussed at length its finding that

6 petitioner "needs to continue to participate in self help in order to continue to

7 understand and cope with stress in a non-destructive manner . . . [and] in order to

8 continue to develop insight into the underlying factors that led to this offense."

9 Resp't Ex. C at 96.

10        The board was particularly concerned with petitioner's minimization of

11 his culpability in the crime. During earlier parole hearings, petitioner placed

12 much of the blame for the murder on Mr. Bettencourt, as well as the victim

13 himself. For instance, petitioner had previously stated that it was Mr.

14 Bettencourt, not he, who grabbed the butcher knife, and that the fight escalated

15 when the victim wielded a gun. As recently as 2002, petitioner expressed

16 concern at the BPT's failure to look into the "type of person" the victim was,

17 which the board interpreted as petitioner downplaying his role in the murder.

18 May 14, 2002 Hr'g Tr. at 62 (Resp't Ex. F).

19        By the 2005 hearing, petitioner appeared to assume complete

20 responsibility for the murder. At the hearing, the district attorney asked

21 petitioner about the progress that he had made regarding in assuming personal

22 responsibility for the crime. Petitioner responded:

23            I believe that, as I've gotten older and through my faith, I've
learned that lying about what I did is going to get me nowhere.

24 And it doesn't do, it isn't respectful to the family. It isn't respectful
to Mark's soul, so to speak. I need to become straight and be clean,

25 and I've tried to do that in the past couple of hearings. And people,
the Board, the Panel, can hang me up for lying, because I did lie. I

26 did, you know, place blame elsewhere. But you know, there's not,
there's nothing I can do that's going to clean up or sugar coat what

27

28                                  8

I did.  Mr. Jones was a human being and he's dead and I stabbed him.  And there wasn't really an excuse for that.

Resp't Ex. C at 66.

While the BPT was pleased that petitioner fully accepted responsibility for the murder, it characterized such change as "recent" and expressed a desire to see petitioner "maintain those gains over an extended period of time."  Id. at 96.  The panel was specifically concerned  that it took petitioner until 2000 to admit that he stabbed the victim with a butcher's knife, and also that petitioner had not yet "sufficiently participated in beneficial self help" while in prison "in order to continue to understand and cope with stress in a non-destructive manner" and "continue to develop insight into the underlying factors that led to [his] offense." Id. at 94, 96.  Under California law, the BPT's concerns in this regard may be considered as "circumstances tending to show unsuitability."  Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E).

   3.   There was "Some Evidence" to Support BPT Decision

The BPT's May 20, 2005 decision to deny petitioner parole is supported by some evidence bearing some indicia of reliability.  The  murder offense was cruel and callous; petitioner has an unstable social history; and petitioner needs further self-help and therapy programming in order to gain greater insight into reasons for his actions.  See, e.g., Rosas v. Nielsen, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (upholding denial of parole based on gravity of offense and psychiatric reports); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment).

Petitioner contends that the board did not give proper weight to the circumstances tending to show suitability for parole.  See Cal. Code Regs. Tit. 15, § 2402(d)(1)-(9).  Indeed, the BPT noted several factors supporting petitioner's case for parole eligibility, namely, a lack of disciplinary write-ups

9

while incarcerated, two recent psychological evaluations that were both favorable, good parole plans, excellent community and family support, and several job offers.  Id. at 95.  However, the board concluded that "the[se] positive aspects of behavior do not outweigh the factors of unsuitability."  Resp't Ex. C at 97.  It is beyond the scope of this court's authority to re-weigh the factors affecting parole suitability.  Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

## CONCLUSION

Petitioner is not entitled to federal habeas relief because the state courts' rejection of his federal claims was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

The court is satisfied that the board gave petitioner individualized consideration and that there is "some evidence" in the record to support the panel's decision to deny petitioner parole at the May 20, 2005 hearing.

The petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  Aug. 09, 2007

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.06\Collier1.denial.wpd

10